## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN MICHIGAN

ALEXANDER NEWTON, ALFFED PERRY,
RYAN JELTEMA and JAKOB STIFFERMAN,

      Plaintiffs,

                                  Case No.

v.

                                  Hon.

GRAND BLANC TOWNSHIP,
DENNIS LIIMATTA,

      Defendants.

---

Batey Law Firm, PLLC
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI 48025
(248) 540-6800-telephone
(248) 940-5848-fax
sbatey@bateylaw.com

---

## **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiffs, Alexander Newton, Alfred Perry, Ryan Jeltema and Jakob Stiffereman by and through their attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for Complaint against Defendants state as follows:

1.     Plaintiff, Alexander Newton ("Newton"), is a resident of the City of Lapeer, County of Lapeer and State of Michigan.

2. Plaintiff, Alfred Perry ("Perry"), is a resident of Township of Grand Blanc, County of Genesee and State of Michigan

3. Plaintiff, Ryan Jeltema ("Jeltema"), is a resident of Township of Grand Blanc, County of Genesee and State of Michigan.

4. Plaintiff, Jacob Stifferman (Stifferman"), is a resident of Township of Grand Blanc, County of Genesee and State of Michigan

5. Defendant, Grand Blanc Township (hereinafter "GBT") is a governmental entity duly authorized to do business in the County of Genesee and State of Michigan.

6. Upon information and belief, Defendant, Dennis Liimatta, is a resident of the County of Genesee and State of Michigan.

7. Jurisdiction and venue are proper in the District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

8. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, and jurisdiction and venue is otherwise proper in this Court.

9. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful racial discrimination/harassment and retaliation in violation of First Amendment of the United States Constitution and which resulted in emotional and economic damages to Plaintiff.

## GENERAL ALLEGATIONS

2

10.     Plaintiffs incorporate by reference paragraphs 1 through 9 of the Complaint as though fully set forth herein.

11.     Plaintiff, Newton began his tenure with Defendant, GBT as a part-time employee of the Grand Blanc Township Fire Department.

12.     In February, 2023 Plaintiff, Perry began his employment with Defendant, GBT as a employee of the Grand Blanc Township Fire Department and is currently employed as a part-time firefighter

13.     In September, 2019 Plaintiff, Perry began his employment with Defendant, GBT as an employee of the Grand Blanc Township Fire Department and is currently employed as a part-time firefighter.

14.     In February, 2018 Plaintiff, Jeltema began his employment with Defendant, GBT as a employee of the Grand Blanc Township Fire Department. and is currently employed as a part-time firefighter.

15.     In August 2011 Plaintiff, Stifferman began his employment with Defendant, GBT as a employee of the Grand Blanc Township Fire Department and is currently employed as a part-time firefighter.

16.     Defendant, Dennis Liimatta ("Liimatta") is the Superintendent of Defendant, GBT.

17.     Upon information and belief according to National Fire Protection Association ("NFPA") research, career fire departments operate at a rate of 1.54 to 1.81 career firefighters per 1,000 people protected.

18.     A "career fire department" is a fire department comprised of only full-time firefighters.

19.     A "career firefighter" is a firefighter who is a paid, full-time firefighter.

20.     Upon information and belief GBT has a little over 40,000 residents meaning according to the NFPA statistics the GBT Fire Department should have the equivalent of at least 61 full-time firefighters.

21.     The Grand Blanc Township Fire Department has both full-time firefighters and part-time firefighters.

22.     During Chief Jent's time as Fire Chief for Defendant, GBT the GBT Fire Department had 6 full-time firefighters and 28-30 part-time firefighters.

23.     The number of full-time and part-time firefighters are far below the industry standards requiring at the equivalent of at least 61 full-time firefighters.

24.     Part-time firefighters were not required to work on days scheduled leaving Defendant, GBT in danger of having only 6 firefighters available at any one time which was far below the National Fire Protection Association's ("NFPA") recommendations.

25.     All Plaintiffs desired to be named full-time firefighters.

26.     The interview process for a full-time firefighter for Defendant, GBT had gone unchanged for years.

27.     The position would be limited to internal part-time firefighters applying for the full-times position.

28.     Defendant, GBT would have all of the qualified applicants take a test and those meeting a minimum test score would move on to the interview process.

29.     Prior to September 2025 Plaintiffs, Jettema and Stifferman had applied for the position of full-time firefighter and have qualified to take the test with several having been interviewed by Defendant, Liimattar and received favorable responses and comments from Defendant, Liimattar.

30.      In 2024 Defendant Liimattar told Plaintiff, Stifferman he was qualified for the job and he could see Stifferman in the job if had another spot.

31.     In April, 2025 Defendant, GBT hired Jamie Jent ("Chief Jent") to be its new Fire Chief.

32.     After taking over as Fire Chief, Chief Jent began to recognize that the Grand Blanc Township Fire Department was seriously understaffed.

33.     Chief Jent began lobbying Defendant, GBT to hire more full-time firefighters, maintain safer staffing levels and upgrade the equipment.

34.    Officials of Defendant, GBT, and in particular Defendant, Liimatta, were resistant to Chief Jent's campaign to hire more full-time fighters.

35.    On September 28, 2025 there was an attack on the Church of Jesus Christ of Latter-Day Saints in Grand Blanc Township in which the perpetrator drove his pickup truck into the chapel, exited the vehicle began shooting at the congregation with an AK-47 style rifle.

36.    The perpetrator then set the building on fire causing the GBT Fire Department and Fire Departments from other municipalities to respond.

37.    Due to being understaffed only 5 firefighters from GBT responded to the call causing Defendant, GBT to rely on crews from surrounding municipalities.

38.    Following the tragic events of September 28th, Chief Jent continued to campaign for additional full-time firefighters.

39.    Upon information and belief, Chief Jent's six-month anniversary of was in October, 2025 and his employment agreement with the township had a provision allowing Defendant, GBT to terminate his employment without severe economic penalty.

40.    In October 2025 Defendant, Liimattar began lobbying to have Jent removed as Fire Chief.

41.    Liimattar was able to have Chief Jent's termination on the agenda at an October 28, 2025 meeting.

42. Plaintiffs supported Chief Jent and his desire to have more full-time firefighters which would be safer for the residents of Grand Blanc Township.

43. Plaintiffs exercised their 1st Amendment right to free speech and communicated on social media, to friends, family members and other township residents that the township was trying to terminate Chief Jent over his desire to have appropriate staffing levels for full-time firefighters, which would make it safer for all residents of GBT.

44. At all times relevant, Plaintiffs were acting in their roles as private citizens.

45. As a matter of public concern, Plaintiffs along with other members of the community discussed the fire department being understaffed and Defendant Liimatta attempting to terminate Fire Chief Jent's employment for trying to build a Fire Department that adequately protects the citizens of GBT.

46. As a result of public outcry, caused, in part due to Plaintiff exercising their First Amendment right to Freedom of Speech, on the morning of October 28, 2025 Defendant, GBT removed Chief Jent's possible termination from the agenda for the meeting.

47. Despite having removed Chief Jent's termination from the agenda, Plaintiffs and hundreds of concerned residents appeared at the meeting on the evening of October 28, 2025 to voice their support for Chief Jent.

48.     Following Plaintiffs exercising their First Amendment Right to Freedom of Speech, Defendant, Liimattar began to take retaliatory action against Plaintiff's for speaking on an issue of public concern.

49.     Defendants changed the methods for hiring a full-time firefighter so that Plaintiffs would not even qualify to take the test.\

50.     Plaintiffs who were previously qualified to take the test, some of whom had been previously interviewed and told "I can see you in this position if we get another spot" were now unqualified to take the test.

51.     Defendants also changed the process to consider applicants from outside the GBT Fire Department.

52.     Defendants' actions were taking to exclude Plaintiffs from being promoted to a full-time position in retaliation for Plaintiffs exercising their First Amendment right to Free Speech.

53.     Defendant, GBT is responsible for all acts committed by its agents, representatives and employees within the scope of their employment.

54.     Defendants, through their agents, representatives and employees, were predisposed to harass, discriminate and retaliate against Plaintiffs on the basis of their exercising their First Amendment Right to Free Speech and acted in accordance with that predisposition.

55. Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

56. During the time period in question, Defendant, GBT is a governmental agency and Plaintiff's employer and Plaintiff is its employee within the meaning of the First Amendment of the United States Constitution and 42 U.S.C. §1983, the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.

57. Moreover, Defendant, GBT is responsible for all acts committed by their agents, representatives and employees, who were at all times acting under color of law and within the scope of their employment/official positions.

58. Defendant, through its agents, representatives and employees, were predisposed to harass and discriminate against Plaintiff on the basis of his disability, his rights under the United States Constitution and acted in accordance with that predisposition.

59. Defendants' actions were intentional, or were carried out with reckless indifference to Plaintiff's rights and sensibilities.

60. Plaintiff has also sustained damages due to Defendants' violations of the First Amendment of the United States Constitution and 42 U.S.C. §1983, the

9

Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.

61. Defendant's customs, policies and procedures that disabled workers, including Plaintiff are not to be accommodated and that workplace accommodations are not available to disabled employees and veterans are clearly in violation of the First Amendment of the United States Constitution and 42 U.S.C. §1983, the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*.and have been committed an especially malicious or reckless act of discrimination that Plaintiff is entitled to punitive damages under 42 U.S.C. §1983, 42 U.S.C.

**COUNT I**
**VIOLATION OF 42 USC 1983 VIOLATIONS OF**
**PLAINTIFF'S FIRST AMENDMENT RIGHTS-FREEDOM OF SPEECH**
*As to the Individual Defendant Liimattar*

62. Plaintiffs incorporate by reference paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. This action is brought pursuant to 42 U.S.C. §1983 against all Defendants for the purposeful discrimination of Plaintiff's right to free speech under color of law in violation of the First Amendment.

64. At all times relevant, Defendant, GBT pursuant to the rules, policies and procedures of Defendant, GBT as mandated by Defendant Liimattar, punished

10

employees who exercised their First Amendment rights on matters of a public concern that Defendants disagreed with.

65. Freedom of speech constitutes the core of those activities protected by the First Amendment of the United States Constitution.

66. Throughout their employment with GBT Plaintiffs exercised their First Amendment right to Freedom of Speech, including comments made to friends, family, social media, media and Defendants regarding matters of public concern of which are protected by the First Amendment.

67. Plaintiffs' comments regarding Chief Jent and his campaign for adequate staffing of firefighter to safely provide fire suppression services to the residents of GBT were matters of public concern.

68. Defendants took adverse employment action against Plaintiffs by changing the qualifications needed to become a full-time firefighter to essentially ban Plaintiffs from being promoted to full-time firefighters.

69. Defendants refusal to staff the Fire Department with an adequate number of full-time firefighters was a matter of public concern, protected by the First Amendment.

70. 42 U.S.C. §1983 provides a federal cause of action against any person who, acting under color of state law, deprives another person of any constitutional or federal statutory rights, including Plaintiffs' right to freedom of speech.

11

71.     Pursuant to 42 U.S.C. §1983, Defendants violated Plaintiffs' First Amendment right to free speech by Plaintiffs by changing the qualifications needed to become a full-time firefighter to essentially ban Plaintiffs from being promoted to full-time firefighters, due to their exercise of his First Amendment rights on matters of public concern.

72.     GBT acted under codes of law specifically customs, policies and practice of prohibiting employees of GBT from engaging in protected speech, and took adverse employment action in violation of Plaintiff's First Amendment rights to free speech.

73.     Defendant Liimattar was at all times relevant to this action acting under color of law and within the scope of his employment and set all rules, policies and standards of Defendant, GBT regarding eliminating Free Speech on certain matters of public concern.

74.     At all relevant times, Defendant Liimattar was acting pursuant to his authority as Superintendent and was using the power of his office to justify his actions.

75.     The right to be able to voice their concerns regarding the safety and welfare of the residents of GBT was a clearly established right of which a reasonable person and Superintendent in the Defendants' position under the circumstances of this case knew or should have known.

76. Defendants' actions as set forth herein, taken against Plaintiffs, abridge Plaintiffs' right to equal protection of the laws in violation of the Fourteenth Amendment of the United States Constitution.

77. Defendant Liimattar is not entitled to governmental or qualified immunity.

78. Defendant's callous and repeated disregard of Plaintiffs' constitutional rights rises to the level of deliberate indifference.

79. As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, which constitute a violation of Plaintiffs' constitutional rights, Plaintiffs have suffered injuries and damages, including but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

80. Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiffs for all damages allowed under Federal Law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter the Defendants this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. Defendants' conduct was and remains extreme and outrageous subjecting Defendants to punitive damages.

WHEREFORE, Plaintiffs respectfully request this Honorable Court enter a judgment in their favor and against Defendants for all damages to which they are entitled to pursuant to 42 U.S.C. §1983, for violations of Plaintiff's First Amendment rights including, but not necessarily limited to, economic damages, non-economic damages, exemplary damages, punitive damages, cost interest and attorney's fees.

**COUNT II**
**VIOLATION OF 42 USC 1983 VIOLATIONS OF**
**PLAINTIFF'S FIRST AMENDMENT RIGHTS-FREEDOM OF SPEECH**
*As to Defendant GBT*

81.     Plaintiffs incorporate by reference paragraphs 1 through 80 of the Complaint as though fully set forth herein.

82.     At all times relevant, Defendant, GBT pursuant to the rules, policies and procedures of Defendant, GBT as set and dictated by Defendant, Liimattar infringed on Plaintiffs' First Amendment rights.

83.     Freedom of speech constitutes the core of those activities protected by the First Amendment of the United States Constitution.

84.     Throughout their employment with GBT Plaintiffs exercised their First Amendment right to freedom of Speech, including comments made to and/or about Defendants regarding the fire department being understaffed and Defendant Liimatta attempting to terminate Fire Chief Jent's employment for trying to build a

14

Fire Department that adequately protects the citizens of GBT and were matters of public concern both of which are protected by the First Amendment.

85. Plaintiffs' comments regarding the fire department being understaffed and Defendant Liimatta attempting to terminate Fire Chief Jent's employment for trying to build a Fire Department that adequately protects the citizens of GBT. were matters of public concern.

86. Defendants took adverse employment action against Plaintiffs by changing the qualifications for a full-time firefighter to exclude Plaintiffs from the promotion for their exercise of free speech.

87. Defendants understaffing the Fire Department and failing to have adequate equipment and personnel to protect the citizens of GBT were matters of public concern which are protected by the First Amendment.

88. 42 U.S.C. §1983 provides a federal cause of action against any person who, acting under color of state law, deprives another person of any constitutional or federal statutory rights, including Plaintiffs right to freedom of speech.

89. Pursuant to 42 U.S.C. §1983, Defendants violated Plaintiffs' First Amendment right to free speech changing the qualifications for a full-time firefighter to exclude Plaintiffs from the promotion speech, due to their exercise of their First Amendment rights on matters of public concern.

15

90. GBT acted under codes of law specifically customs, policies and practice of prohibiting employees of GBT from engaging in protected speech, and took adverse employment action in violation of Plaintiffs' First Amendment rights to free speech.

91. Defendants acted under codes of law specifically customs, policies and practice of prohibiting employees of the GBT from engaging in protected speech, and took adverse employment action in violation of Plaintiffs' First Amendment rights to free speech.

92. As a result of Defendants' violation of Plaintiffs' well established rights under the United States Constitution, made applicable to the Defendants' through 42 U.S.C. §1983, Plaintiff sustained damages including, but not necessarily limited to, economic damages including loss of back pay, loss of front pay, loss of benefits, loss of seniority, loss of opportunity for advancement, loss of pension and other benefits, non-economic damages including, but not necessarily limited to, emotional distress, loss of self-esteem, outrage, mental anguish, anxiety, humiliation, embarrassment, all resulting in physical symptoms. Further, the nature of Defendants' conduct entitles Plaintiff to exemplary and/or punitive damages.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court enter a judgment in their favor and against Defendants for all damages to which they are

entitled to pursuant to 42 U.S.C. §1983, for violations of Plaintiffs' First Amendment rights including, but not necessarily limited to, economic damages, non-economic damages, exemplary damages, punitive damages, cost interest and attorney's fees.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
SCOTT P. BATEY (P54711)
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

Dated: April 13, 2026

17

## DEMAND FOR JURY TRIAL

NOW COME, Plaintiffs, Alexander Newton, Alfred Perry, Ryan Jeltema and Jakob Stiffereman, by and through their attorney, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issues allowed by law.

Respectfully submitted,

**BATEY LAW FIRM, PLLC**

By: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, Michigan 48025
    (248) 540-6800-telephone
    (248) 940-5848-fax
    sbatey@bateylaw.com

Dated:  April 13, 2026